FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2019 APR -5 PM 4: 22
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSHUA KIMBER *Plaintiff* | * * * |
| v. | * * Civil No. ELH-18-3046 |
| PLUS3 IT SYSTEMS, LLC ALISSA JEAN CAULEY BETH PAOLICELLI KRISTIN HURLBUT *Defendants*. | * * * * * * * |

\*\*\*\*\*\*\*\*

## MEMORANDUM

Plaintiff Joshua Kimber, who is self-represented, filed suit against his former employer, Plus3 IT Systems, LLC ("Plus3"), as well as Plus3 employees Alissa Jean Cauley, Elizabeth Patterson[1], and Kristin Hurlbut. ECF 1 ("Complaint"); ECF 5 ("Amended Complaint"). Plaintiff, who resides in Virginia, alleges that defendants harassed him and discriminated against him on the basis of race and sex during the course of his employment with Plus3, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e to 2000e-17. ECF 5 at 3, 5. Further, plaintiff alleges that defendants retaliated against him for complaining about the harassment and unlawfully terminated him in violation of these federal laws. The Amended Complaint also alleges a state contract claim, multiple state tort law claims law, and claims under the Virginia Human Rights Act, Va. Ann. Code §§ 2.2-3900 to -3903. *Id.* at 4.

---

[1] In the Amended Complaint, plaintiff refers to Patterson as "Beth Paolicelli." *See* ECF 5. However, in a sworn affidavit (ECF 10-2), she states that her name is now Elizabeth Patterson. *Id.* ¶ 1. She explains that Paolicelli was her surname before she was married, and she has since adopted her husband's last name. *Id.* ¶ 2. Accordingly, I shall refer to her as Patterson. And, I shall direct the Clerk to correct the docket.

Cauley, Patterson, and Hurlbut (collectively, the "Employees"), who reside in Virginia, filed a Motion to Dismiss for Lack of Jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). ECF 10. It is supported by a memorandum of law (ECF 10-1) (collectively, the "Motion to Dismiss") and the affidavits of Patteron (ECF 10-2), Cauley (ECF 10-3), and Hurlbut. ECF 10-4. Plus3, located in Virginia, filed a Motion to Transfer Venue to the Eastern District of Virginia, pursuant to 28 U.S.C. § 1404(a). ECF 15. It is supported by a memorandum (ECF 15-1) (collectively, the "Motion to Transfer") and the affidavit of Plus3's President. ECF 15-2. Plaintiff opposes the Motion to Dismiss and, alternatively, moves to transfer the case to the Eastern District of Virginia, under 28 U.S.C. § 1404(a). ECF 16. Defendants have jointly replied. ECF 17.

Plaintiff has also moved for leave to file a second amended complaint. ECF 18 ("Motion to Amend"). Although I shall not resolve this motion, I note that it contains no allegations that would alter the outcome of the disposition of the motions to transfer.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. In addressing the Motion to Transfer, the Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

For the reasons that follow, I shall transfer the case to the Eastern District of Virginia, pursuant to 28 U.S.C. § 1404, without consideration of the merits of the Motion to Dismiss or the Motion to Amend.

## I. Factual Background[2]

Kimber, a black man who resides in Virginia, began working for Plus3 in September 2017. ECF 5 at 2, 6. "Plus3 is a company that provides information technology services to customers including the United States Government." ECF 15-2, ¶ 3. Its only physical office is in Reston, Virginia., *id.* ¶ 9, and it has "never operated within the State of Maryland, other than having its principal office there for purpose of its registration with the Maryland State Department of Assessments and Taxation." *Id.* ¶ 5.[3]

As noted, plaintiff and the Employees all reside in Virginia. ECF 5 at 2; ECF 10-2, ¶ 7; ECF 10-3, ¶ 6; ECF 10-4, ¶ 6. And, Kimber and the Employees all worked at Plus3's office in Virginia. *Id.* ¶ 9. Moreover, none of the Employees have ever lived, worked, or owned real estate in Maryland. ECF 10-2, ¶¶ 9-10; ECF 10-3, ¶¶ 7-8; ECF 10-4, ¶¶ 7-8.

In October and November 2017, Cauley, a white woman and the then-Human Resources Officer, allegedly "began making sexually suggestive comments and romantically charged gestures" toward Kimber. *Id.* Plaintiff reports that Cauley "was always talking about looking for a man, [and] always screaming out loudly in the office 'Why am I not married?'" *Id.* at 7. Plaintiff overheard a conversation in which Cauley and another employee "referenc[ed] sex and penis." *Id.*

Kimber also vaguely alleges that Patterson, whom plaintiff describes as the "nominal head of human resources," engaged in "problematic conduct." *Id.* at 6. He asserts that Cauley and

---

[2] The facts are derived from plaintiff's Amended Complaint. ECF 5. Defendants do not provide their versions of the events. *See* ECF 10-1; ECF 15-1.

[3] In his Affidavit (ECF 15-2), Mark Jefferson, President of Plus3, explains that he co-founded Plus3 when he lived in Maryland and used his home address at that time as the company's principal office. *Id.* ¶¶ 4, 6.

3

Patterson "were in cahoots when it came to ignoring [his] objections to the discrimination and harassment[.]" *Id.* at 6-7.

Plaintiff "filed an internal sexual harassment charge [against Cauley] in the company's human-resources department." *Id.* at 6. But, according to plaintiff, Cauley was "the head human resources officer at the time." *Id.* He eventually "discuss[ed] the matter with two co-employees." *Id.* at 6.

According to the Amended Complaint, in December 2017, plaintiff spoke with his supervisor regarding Cauley's "erratic behavior" and "her lying and deceptive ways[.]" *Id.* at 7. He also complained about the "erratic behavior" of Hurlbut, a "member of the corporate division." *Id.* According to plaintiff, his supervisor "did not want [plaintiff] to make a big deal of it[.]" *Id.* Further, he said "he did not want [Kimber] to get fired over drama." *Id.*

In February 2018, Patterson led an investigation of Kimber. *Id.* ¶ 8. This resulted in a "progress report." *Id.*

Hurlbut spoke "rudely" to plaintiff on March 29, 2018, while he was talking with another coworker. *Id.* She called him "unprofessional, thus causing a scene." *Id.* Plaintiff alleges that Patterson then came out of her office "and assault[ed him] by putting her hands on [him], dragging [him] out of the office, shov[ing him] into another room," and telling plaintiff what he was doing wrong. *Id.*

On June 11, 2018, plaintiff emailed Patterson and copied the Plus3 Chief Executive Officer, Mark Jefferson, stating that he needed "help," without identifying the problem. *Id.* at 9. Plaintiff clarified the issue on June 18, 2018, and filed a complaint against Cauley. *Id.* According to the Amended Complaint, Patterson told plaintiff the next day that she was at a conference and would address the issue upon her return to the office. *Id.* Kimber alleges that Patterson and the

4

CEO of Plus3 met with a law firm on June 21, 2018. *Id.* On June 28, 2018, Plus3 fired plaintiff "for no reason and offered [him] a tiny severance that [he] rejected." *Id.*

The next day, Kimber filed a Charge of Discrimination with the Fairfax County Office of Human Rights and Equity naming Plus3 as the respondent. ECF 1-2 at 1. The Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC") as EEOC Charge No. 570-2018-02691. *Id.* On July 3, 2018, the EEOC issued him a Notice of Right to Sue. ECF 1-2 at 3.

## II. Discussion

### A.

Defendants Cauley, Hurlbut, and Patterson all reside in Virginia, where the misconduct allegedly occurred. ECF 10-2, ¶ 7; ECF 10-3, ¶ 6; ECF 10-4, ¶ 6. They have moved to dismiss for lack of personal jurisdiction. ECF 10. Plus3, which is located in Virginia, has moved to transfer the case to the Eastern District of Virginia. ECF 15. Responding to both motions, plaintiff opposes dismissal and, in the alternative, he moves to transfer the case to the Eastern District of Virginia. ECF 16.

Section 1404(a) of Title 28 of the United States Code states, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Notably, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, it helps "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Id.* (citation omitted). Ultimately, § 1404(a) "tempers the effects" of the plaintiff's choice of venue. *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

5

In a motion to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Costar Realty Info., Inc. v. Meissner*, 604 F.Supp.2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Ultimately, "[t]he decision whether to transfer is committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469; *see also In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

Based on the statutory language, the standard for a § 1404(a) transfer can be distilled, as follows: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D. Md. 2002). Thus, "[a] motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g., Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617.

As noted in *Excel Servs. V. Walker*, AW-09-3128, 2010 WL 1759789 at *2 (D. Md. April 30, 2010), "[t]hough neither the Supreme Court nor the Fourth Circuit have explicitly stated a court may transfer a case under 28 U.S.C. § 1404(a) when venue is proper[] but the court lacks personal jurisdiction over a defendant, other courts in this District have found personal jurisdiction unnecessary under this statute, and the Fourth Circuit has not held otherwise." *Id*; *see also Harry & Jeanette Weinberg Found. v. ANB Inv. Mgmt. & Trust Co.*, 966 F.Supp. 389, 392 (D. Md. 1997)

6

(transferring under 28 U.S.C. § 1404(a) proper despite a lack of personal jurisdiction); *Ulman v. Boulevard Enterprises, Inc.*, 638 F. Supp. 813, 815 (D. Md. 1986) ("Where personal jurisdiction is lacking but venue is present, the original forum court has the authority to transfer pursuant to and in accordance with 28 U.S.C. § 1404(a), provided, of course, that subject matter jurisdiction exists in the original forum court.").

Moreover, of the circuits that have addressed this issue, the majority have concluded that personal jurisdiction is not required for transfer under 28 U.S.C. § 1404(a). *Excel*, 2010 WL 1759789 at *2; *see Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993); *Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986); *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985); *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n. 16 (11th Cir. 1982). *But see Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (concluding that only transfer under 28 U.S.C. § 1406(a) is proper when personal jurisdiction is lacking); *Mayo Clinic v. Kaiser*, 383 F.2d 653, 654 (8th Cir. 1967) (same).

As a result, in order to address the Motion to Transfer, the Court need not determine whether it has personal jurisdiction over the defendants.

**B.**

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

Section 1391 of Title 28 of the United States Code governs "the venue of all civil actions" filed in federal district court. *Id.* § 1391(a). Under § 1391(b), venue exists in:

7

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As noted, plaintiff and the individual defendants are all residents of Virginia. Plus3 is a Maryland corporation, but all of its business is conducted at an office in northern Virginia; it has no office in Maryland. ECF 15 at 1; ECF 10-1 at 5-6; ECF 15-2, ¶¶ 5, 8. Therefore, personal jurisdiction is proper in Virginia. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (bracket in *Daimler*) (citation omitted) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"). And, venue exists in the Eastern District of Virginia, the proposed transferee venue.

Because this suit "might have been brought in the destination venue," *In re: Volkswagen*, 545 F.3d at 312, the Court must weigh several factors in considering the motion to transfer under § 1404(a). As stated, these include: (1) the weight accorded to plaintiff's choice of venue; (2) the convenience of the witnesses; (3) the convenience of the parties; and (4) the interest of justice. *Plumbing Servs., Inc.*, 791 F.3d at 444.

### 1. Plaintiff's Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g., Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table). Indeed, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should

8

rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *Mamani*, 547 F. Supp. 2d. at 469. This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

As indicated, a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . ." *Lynch*, 237 F. Supp. 2d at 617. But, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007) (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

Here, plaintiff and the individual defendants all reside in Virginia. At the times relevant to this action, they were employed at Plus3's office in Virginia. ECF 5 at 2-3, 6-10. And, Virginia

9

is the Commonwealth in which the alleged harassment and discrimination occurred. *Id.* None of the alleged conduct occurred in the State of Maryland.

Indeed, Plus3 has never operated in Maryland, "other than having its principal office there for purpose of its registration with the Maryland State Department of Assessments and Taxation." ECF 15-2, ¶ 5. Therefore, plaintiff's original choice of venue is not entitled to significant weight because of Maryland's weak connection to the claims asserted. Moreover, in light of plaintiff's own motion for transfer, the weight accord plaintiff's original choice of venue is further diminished. ECF 16 at 4-6. This factor weighs in favor of transfer.

### 2. Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* 15 C. WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 3851 (4th ed.) ("WRIGHT & MILLER") ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a).").

Defendant asserts that "Plus3 has no physical presence in Maryland: all of its employees work in Virginia, and all of its books and records are in Virginia." ECF 15-1 at 3. Further, the "time and cost involved in having Plus3 and its employees submit to proceedings in [Maryland] . . . would be materially inconvenient" compared to conducting proceedings in the Eastern District of Virginia. *Id.*

10

Plus3 employees likely account for most of the witnesses in this dispute. Plaintiff does not challenge defendants' assertions. Indeed, he also moves for transfer. *See* ECF 16. The convenience of the witnesses favors a transfer to the Eastern District of Virginia.

### 3. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." WRIGHT & MILLER § 3849. Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." *Id.* at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Defendants made the same argument regarding the convenience of the parties and the convenience of the witnesses. ECF 15-1 at 3. It would be "materially more inconvenient" to require litigation in Maryland when all parties are based in Virginia. *Id.*

Plaintiff does not challenge this assertion and also moves for transfer. *See* ECF 16. The convenience of the parties favors a transfer of this case to the Eastern District of Virginia.

### 4. Interest of Justice

The final factor for a court's consideration is whether transfer is in the interest of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." WRIGHT & MILLER § 3854. In assessing whether transfer would meet the interest of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties. *See Bd. of Trustees v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988).

### i. Governing Law

Plaintiff alleges a state contract claim, multiple state tort law claims, and claims under the Virginia Human Rights Act. ECF 5 at 4.

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *see also Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Property Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)). However, plaintiff does not specify the contract that was breached. Nor have any of the parties have submitted a contract to the Court. Accordingly, the Court cannot consider what state law would govern here.

Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("lex loci delicti"). *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Virginia, the substantive tort law of Virginia governs the plaintiff's tort claims. *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983). The Eastern District of Virginia is intimately familiar with the tort law of Virginia. I am not.

Similarly, the Eastern District of Virginia is intimately familiar with the Virginia Human Rights Act, and I am not.

### ii. Docket Conditions

"Another element relevant to the interest of justice is a comparison of the docket conditions in the two courts." WRIGHT & MILLER § 3854. In considering this factor, "'the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (alteration omitted) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Generally, this factor does not command substantial weight in considering whether to transfer a case. *See, e.g., JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 793 (E.D. Va. 2007).

Transfer will allow for a more expeditious resolution of this case because the time to trial in civil cases in the Eastern District of Virginia is shorter than in Maryland. During the 12-month period ending September 30, 2018, the median time to trial in civil cases was 32.6 months in the District of Maryland, but was only 12.4 months in the Eastern District of Virginia. Federal Judicial Caseload Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf. Although this factor does not command great weight, it favors transfer.

### III. Conclusion

The balance of factors strongly supports the transfer of this case to the Eastern District of Virginia. For the foregoing reasons, I shall grant the Motion to Transfer.

An Order follows.

Date: April 5, 2019                                /s/
                                                           Ellen L. Hollander
                                                           United States District Judge